## Fees and Expenses in State Hospitals.

SCHNADER, Special Dep. Att'y-Gen., June 26, 1928.—We have your request to be advised with regard to certain questions which the recent audits of State hospitals for the sick and injured have suggested.

We shall state and answer your questions in their order:

### I. Physicians and surgeons collecting fees for their own benefit.

"1. Where physicians and surgeons are employed on a salary basis, can these physicians and surgeons charge and collect fees for their own benefit?"

In our opinion, it is unlawful for any physician or surgeon employed by a State hospital on a salary basis to charge and collect fees for his own benefit for services rendered in the institution.

Any fees or charges collected for such services should be turned over to the institution. These hospitals are State institutions, conducted in State-owned property and operated by State employees. In all cases in which the circumstances justify a charge for the use of the hospital's facilities or for services rendered by employees of the hospitals the amounts collected belong to the State and should be used to defray, *pro tanto*, the hospitals' expenses.

What we have said applies to all physicians and surgeons employed by these hospitals on a salary basis, whether for part-time service or full-time service.

"2. Has the executive board the right to authorize salaries with permission to also collect fees?

"3. Have the boards of trustees power to permit, by resolution, physicians and surgeons to collect not only salaries but also fees without record being made in the hospital books?"

578

The executive board does not have the power to permit salaried physicians or surgeons to collect and keep fees for services performed by them in State hospitals.

Section 709 of the Administrative Code authorizes the executive board "to standardize the qualifications for employment and all titles, salaries and wages of persons employed by the administrative departments, boards and commissions. . . ."

To permit salaried employees of the State to collect and retain for their own use fees for services rendered by them on State property and directly or indirectly incidental to their State employment would clearly not be standardizing their compensation.

Section 2019 of the Administrative Code provides that the board of trustees of a State institution shall have the power and its duty shall be "to fix the salaries of its employees in conformity with the standards established by the executive board."

As the executive board cannot lawfully permit physicians or surgeons to collect and keep fees for services performed by them in State hospitals, it is clear that boards of trustees cannot sanction this practice in fixing the compensation of persons holding positions for which a standard compensation has been established by the executive board.

In cases in which the executive board has not yet established standard salaries for positions, as, for example, the superintendents of State institutions, the boards of trustees must "fix" the salaries of their employees. To let an employee receive fees from patients is not fixing his salary, and any arrangement contemplating the receipt of fees from patients as all or a part of his compensation would clearly be illegal.

Accordingly, we advise you that neither the executive board nor the boards of trustees of State hospitals can lawfully permit salaried employees to retain, as part of their compensation, fees received from patients.

What we have just said has been true only since the passage of the Administrative Code. Prior to that time, the several hospitals were managed by corporate boards of trustees, whose actions in contracting with their respective employees, including superintendents, was not restricted as it is under the Code.

"4. Is it lawful for a physician or surgeon on the pay-roll of these institutions to be on the pay-roll of a corporation?"

If the physician or surgeon is a full-time employee of the institution, he could not lawfully also be on the pay-roll of an individual, a partnership or a corporation.

If the physician or surgeon is only a part-time employee of the State, he may lawfully be on the pay-roll of a corporation for services rendered by him *outside of the institution*.

As previously stated, no State employee can lawfully retain for his own use fees or compensation for services rendered by him in the institution. These institutions were not established and cannot be used for private gain. Any emoluments for services rendered in them by any physician or surgeon on the State's pay-roll should be paid to the respective institutions.

"5. If the collection of fees by physicians and surgeons is illegal, should these fees collected in the past be refunded to the State Treasury?"

Fees which have been illegally retained by physicians and surgeons employed by a State hospital should be refunded. If such fees had been paid to the institution when they were collected, they would have reduced the

State's appropriation liability to the hospital, and any moneys refunded by physicians or surgeons should be paid into the State Treasury.

## II. Free service.

"Do the board of trustees, either as a body or individually, the surgeon-in-chief or any other persons have the legal power to authorize free treatment to patients financially able to pay?"

There are ten State hospitals for sick and injured persons. With the exception of three of them which were created by the same act of assembly, each hospital was established or acquired as a State institution by a separate act. The three hospitals which were created by the same act are the Blossburg, Connellsville and Philipsburg State Hospitals. The acts differ in a number of particulars, so that a general rule cannot be stated, governing the extent to which free service shall be rendered in all State hospitals for the sick and injured.

On Nov. 15, 1923, Deputy Attorney-General J. W. Brown rendered an opinion to Hon. C. W. Hunt, Deputy Secretary of Welfare, in which he covered in detail the extent to which free service must be rendered by the hospitals in question. See Official Opinions of the Attorney-General, 1923-1924, page 369. For your convenience, we shall restate Deputy Attorney-General Brown's conclusions, as follows:

1. In the Ashland, Blossburg, Connellsville, Philipsburg and Scranton State Hospitals, indigent injured patients must be treated without charge. Injured patients who are not indigent should be made to pay the hospitals' established charges for the services rendered.

If any patients other than injured patients are admitted, the same distinction prevails—indigent patients should be treated without charge and all others should be required to pay.

2. In the Hazleton and Shamokin State Hospitals, persons injured in mines or workshops and on railroads and injured laboring men generally must be treated without charge, subject to the duty of their employers to pay for medical and hospital services under the workmen's compensation laws, to which we shall refer later.

All other patients, unless indigent, should be required to pay the hospitals' established charges for the services rendered.

3. There are no statutory provisions specifying what classes of patients shall be admitted to the Nanticoke and Coaldale State Hospitals or what classes of patients shall pay. Their boards of trustees, with the approval of the Department of Welfare, must, therefore, deal with these matters in the rules and regulations governing the operation of their respective institutions.

Subsequent to the date of Deputy Attorney-General Brown's opinion, there has been no change in the law which requires any modification of the views expressed by him.

Clearly, the matter of payment for services rendered should be definitely covered by the rules and regulations of the several hospitals, and if the rules and regulations require all persons to pay who are financially able to do so (and this may be done, except at Hazleton and Shamokin, where persons injured in the mines or workshops or on the railroads and injured laboring men must be treated free to the extent to which their employers are not liable under the Workmen's Compensation Act), neither the board of trustees nor any member thereof, nor the superintendent, nor the surgeon-in-chief, nor any other officer or employee, may make any exception in favor of any

individual patient. All patients, unless they are indigent, must pay, and this rule must be administered uniformly and without exception.

All free cases should, of course, be ward cases. A person not wholly indigent, but unable to pay in full for ward treatment, should be required to pay as much as he can.

### III. Institutions collecting fees for their own benefit.

"1. In addition to the board and general hospital service, is it lawful for these institutions to charge, collect and retain for their own use fees from all classes of patients for medical and surgical services rendered by their salaried staff?

"2. Should the ward rate charged patients be less than the per diem cost?

"3. Can the hospital collect the full ward rate, plus physicians', surgeons', operating-room and X-ray fees in compensation cases?

"4. In compensation cases, where the injured employee remains in the hospital beyond the statutory thirty-day period, is the employee personally responsible for services rendered by the hospital after the end of the statutory period, and have these institutions the right to collect medical and surgical fees as well as hospital charges from the patient for services rendered beyond the thirty-day period?"

1. Your first question under this heading has already been answered. It is not lawful for these institutions to collect fees from all classes of patients for medical and surgical services rendered by their salaried staff, as certain classes must be treated free of charge, as stated under the preceding heading. It is lawful for these institutions to charge, collect and use for maintenance fees received for medical and surgical services rendered by their salaried staff to any and all patients other than those who must be treated without charge.

The ward rate charged to patients should be, as nearly as practicable, the actual cost of the service rendered.

2. In compensation cases, these institutions are entitled to collect from employers the cost of surgical, medical and hospital services and medicines and supplies furnished to injured employees, notwithstanding the fact that the injured employees would be entitled to free service if their cases did not come within the provisions of the workmen's compensation laws. This point was expressly decided by the Supreme Court of Pennsylvania in Trustees of State Hospital v. Lehigh Valley Coal Co., 267 Pa. 474 (1920).

With regard to the amounts collectible by the hospitals, the situation is as follows:

Section 306 (e) of the Workmen's Compensation Act of June 2, 1915, P. L. 736, as amended by the Act of June 26, 1919, P. L. 642, provides that: "During the first thirty days after disability begins, the employer shall furnish reasonable surgical and medical services, medicines and supplies, as and when needed. . . . The cost of such services, medicines and supplies shall not exceed $100. . . . In addition to the above services, medicines and supplies, hospital treatment, services and supplies shall be furnished by the employer for the said period of thirty days. The cost for such hospital treatment, service and supplies shall not in any case exceed the prevailing charge in the hospital for like services to other individuals. . . ."

The Superior Court, in Denne v. Plymouth Coal Mining Co., 91 Pa. Superior Ct. 429 (1927), held that under this section the amount of the employer's liability for "hospital treatment, services and supplies" furnished during the first thirty days after disability begins is unlimited, and that a ruling by the

Workmen's Compensation Board, attempting to limit such liability to $100, was void.

Accordingly, in computing the amounts of these charges, the hospitals should include all items which they would charge to paying ward patients for similar services. These items would include the full ward rate, plus charges for services of physicians or surgeons on the hospital staff, fees for the use of the operating-room and of X-ray apparatus, if such charges are customarily made as a part of the cost of treating paying ward patients. The employer cannot, however, be required to pay any items which would not be charged against the patient if he were in the hospital as a paying ward patient.

3. Your last question was answered by Attorney-General Francis Shunk Brown in an opinion dated Feb. 17, 1916 (Official Opinions for 1915-1916, page 575). He held that if the hospital is required to furnish care and services beyond the period during which the employer is required to furnish such services, the hospital may charge the injured person with the cost of treatment, unless the injured person is within the classes of persons who are entitled to free service, in which case a charge could not properly be made under any circumstances.

From C. P. Addams, Harrisburg, Pa.